# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK FARRIS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:14-cv-421-WTL-DML |
| THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## ENTRY ON DEFENDANT'S MOTION TO DISMISS AND ENFORCE ARBITRATION

This cause is before the Court on Defendant's motion to dismiss complaint and enforce arbitration agreement (dkt. no. 14). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion to dismiss for the reasons set forth below. The Court declines, however, to award Defendant its attorneys' fees, expenses, and costs.

### I. BACKGROUND

Plaintiff Mark Farris began working for Defendant, The Western & Southern Life Insurance Company, in March 2011.[1] At that time, he signed a form entitled "Applicant Notice Dispute Resolution Program," ("Applicant DRP Notice") which stated as follows:

> By my submission of this application to you for employment, I understand that any legal dispute related to this application for employment or any legal dispute during any subsequent employment with the Company will be conducted under its Dispute Resolution Program.
>
> . . . I understand that the last and final step under the Dispute Resolution Program is a requirement of mandatory and binding arbitration, which will be conducted under the American Arbitration's "Employment Arbitration Rules and Mediation Procedures."

---

[1] **The Defendant's proper name is The Western and Southern Life Insurance Company. The Clerk is instructed to update the caption and docket accordingly.**

> The types of claims covered under the program are all legal claims, including: . . . tort claims . . . [and] claims for . . . discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal, state or local law) . . .

Dkt. No. 15-1.

Farris also signed a document entitled "Sales Representative's Agreement," which described the terms and conditions of his employment. By signing the Sales Representative's Agreement, Farris agreed:

> Not to commence any action or suit relating to [his] employment by Western & Southern, but instead, [to] follow the Dispute Resolution Program ('DRP') of the Company as set forth in the form(s), which [he] signed, and the DRP Booklet, described therein, as [his] exclusive remedy for any claims [he has] that are covered by the DRP.

Dkt. No. 15-2 at 2. Section III of the Sale's Representative's Agreement further provided that he agreed "[n]ot to commence any arbitration or action under the DRP or otherwise relating to [his] employment with Western & Southern more than six months after the date of termination of such employment, and to waive any statute of limitation to the contrary." *Id.*

Farris also signed a form entitled "Agreement and Receipt for Dispute Resolution Program" ("DRP Agreement"). That form stated: "The Company and I agree that all legal claims or disputes covered by this Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute that I or the Company may have." Dkt. No. 15-3 at 1. The DRP Agreement and the DRP Booklet, explicitly made part of the DRP Agreement, also mirrored the language contained in the Applicant DRP Notice regarding the types of claims covered by the arbitration agreement. The DRP Booklet further explained the processes for resolving workplace issues and claims, and warned employees (in bold font) that the "DRP will prevent [them] from filing a lawsuit in court for individual relief for a legal claim subject to arbitration." Dkt. No. 15-4 at 7.

The DRP Booklet also advised employees that an arbitrator may award to the prevailing party any relief that might be sought in a court of law. It warned, however, that "[i]f either party pursues a legal claim covered by the DRP in court, the responding party shall be entitled to a stay or dismissal of such action . . . and the recovery of all costs and attorneys' fees and expenses related to such action." *Id.* at 6.

On July 6, 2012, Western & Southern terminated Farris' employment. Farris filed suit against Western & Southern on March 17, 2014, alleging employment discrimination under Title VII, intentional infliction of emotional distress ("IIED"), and a claim for "false light/using misrepresentations and illegal training tactics." Compl. at ¶ 7.1. At no time did he pursue arbitration of his claims.

## II. DISCUSSION

Western & Southern moves the Court to dismiss Farris' complaint and award it its attorneys' fees, costs, and expenses pursuant to the employment agreements noted above and the Federal Arbitration Act ("FAA"). The Court agrees that the arbitration agreement at issue in this case is valid and enforceable. The Court declines, however, to award Western & Southern its fees and costs.

### A. Enforceability of Arbitration Agreement

The FAA provides, in pertinent part, as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If arbitration

is ordered, the court must also stay the proceedings until such arbitration occurs, "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (citations omitted); *see also DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F.Supp.2d 896, 912 (N.D. Ind. 2001) (also analyzing whether defendant waived right to enforce arbitration agreement). Each of these elements is easily satisfied in this case.

*1. Agreement to Arbitrate*

To be valid, an agreement to arbitrate must be in writing, evidence a transaction involving commerce, and satisfy state contract requirements. 9 U.S.C. § 2. Here, the agreement to arbitrate is in writing. *See, e.g.*, Dkt. No. 15-3. The agreement also evidences a transaction involving commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-24 (2001) (an arbitration agreement between an employer and an employee satisfies the "transaction involving commerce" requirement).

The arbitration agreement also complies with Indiana contract law. "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130-31 (7th Cir. 1997) (citations omitted). In other words, there must be an offer, acceptance, and consideration. *See Id.* Here, Western & Southern made an offer to Farris when it provided him a copy of the DRP. By signing the acknowledgment form, he accepted the offer. The agreement to arbitrate is also supported by adequate consideration. Farris received gainful employment as a sales representative and both parties agreed to be bound by the arbitration provision. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir.

4

1999) (holding that employer's promise to arbitrate, binding on both parties, constituted sufficient consideration); *Palmer v. Menard, Inc.*, 2014 WL 835632, *2 (N.D. Ind. Mar. 4, 2014) ("The agreement is supported by adequate consideration: plaintiff agreed to resolve future disputes by arbitration, and defendant agreed to employ plaintiff . . . and be bound by the arbitrator's decision.").

### 2. *Scope of the Agreement*

Farris' claims are also within the scope of the agreement to arbitrate. Farris has alleged tort (IIED and false light) and statutory discrimination claims. Indeed, the arbitration agreement provided as follows:

> The types of claims covered under the program are all legal claims, including: . . . tort claims . . . [and] claims for . . . discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal, state or local law) . . .

Dkt. No. 15-1. Parties are free to provide for the arbitration of such claims. *See, e.g.*, *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 362 (7th Cir. 1999) ("Title VII claims can be subject to mandatory arbitration."); *Fischer v. Beazer Homes, Inc.*, 2011 WL 6092177, *1 (S.D. Ind. 2011) (compelling arbitration of tort claims).

### 3. *Refusal to Arbitrate*

Lastly, Farris has opposed arbitration by filing the instant litigation and by continuing to assert that litigation in federal court is appropriate and proper. There is also no indication that Western & Southern waived its right to compel arbitration by acting "inconsistently with the right to arbitrate." *DeGroff*, 179 F. Supp. 2d at 912 (quoting *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000)). Western & Southern responded to Farris' complaint by filing a motion to dismiss. "It is well-established that a party does not waive its right to

5

arbitrate merely by filing a motion to dismiss." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citations omitted).

### B. Additional Grounds for Unenforceability

In response to Western & Southern's motion to dismiss, Farris argues that the agreement to arbitrate is procedurally and substantively unconscionable. He further argues that Western & Southern "voided the contract itself with actions, misrepresentations and fraudulent statement[s]," and that the contract should be "voided; [sic] because of the defendant's own code of ethics and state and federal laws." Farris' Resp. at 2-3. He also claims that the arbitration clause was "forced on [him]" on "a take it or leave it basis." *Id.* at 2. Accordingly, he argues that he should be permitted to pursue his claims in federal court. As Western & Southern notes, however, this Court is not the proper forum for deciding these issues of arbitrability.

Arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). Additionally, questions of substantive arbitrability, "which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy'—are presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). However, "parties can agree to arbitrate 'gateway' questions of 'arbitrability.'" *See Rent-A-Ctr.*, 130 S. Ct. at 2776. Here, the DRP Booklet contained the following clause (i.e., delegation provision):

> [T]he arbitrators, and not any federal . . . court . . . shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.

Dkt. No. 15-4 at 6.

6

The foregoing clause is almost identical to the provision upheld by the Supreme Court in *Rent-A-Center*. In that case, the Supreme Court noted that there are two types of arbitration related validity challenges under § 2 of the FAA:

> "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."

*Rent-A-Ctr.*, 561 U.S. 63 at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). The Supreme Court concluded that unless the plaintiff specifically challenges the delegation provision, courts "must treat [the provision] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72. In this case, Farris has not challenged the foregoing delegation provision. Rather, he refers to the contract documents as a whole, and he specifically asks for the Sales Representative's Agreement to be voided in its entirety. Because Farris' challenge is to the entire contract rather than to the delegation provision in the DRP Booklet, his allegations are not appropriate for this Court to consider or decide.

### C. Timeliness of Arbitration

Generally, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (citations omitted). Western & Southern, however, requests that Farris' complaint be dismissed rather than stayed pending arbitration, because Farris failed to file an arbitration claim within six months of his termination as required by the Sales Representative's Agreement.

"Indiana law generally holds that 'contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.'" *New Welton Homes*

7

*v. Eckman*, 830 N.E.2d 32, 35 (Ind. 2005) (quoting *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. Ct. App. 1999)). Courts assessing six-month limitations periods for claims similar to those alleged by Farris have found the six-month period to be reasonable. *See, e.g.*, *Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1206 (7th Cir. 1992) (holding that six-month limitations period for § 1981 claim was reasonable and noting that "Title VII provides no public policy contrary to the six-month limitation of actions clause").

Farris did not seek arbitration of his claims within six months of his termination. Accordingly, Farris' complaint must be dismissed rather than stayed pending arbitration.

### D. Attorneys' Fees

Lastly, Western & Southern argues that it is entitled to recover the attorneys' fees, costs, and expenses it has incurred as a result of Farris pursuing his claims in federal court. Although the DRP Booklet provides for such recovery, this Court is not *required* to award such fees. Rather, "courts *may* order fee awards where previously provided for by the parties themselves in a contract." *Marsh Supermarkets, Inc. v. Marsh*, 2013 WL 5719006, *3 (S.D. Ind. 2013) (emphasis added). Farris was previously proceeding pro se in this matter.[2] It is also apparent to the Court that his finances are strained. *See* Dkt. Nos. 2-3. Under these circumstances, the Court declines at this particular juncture to require him to pay Western & Southern's attorneys' fees, costs, and expenses.

---

[2] Counsel recently appeared on behalf of Farris on October 15, 2014.

### III. CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss complaint and enforce arbitration agreement is **GRANTED**. Accordingly, Plaintiff's complaint will be **DISMISSED**.

SO ORDERED: 10/28/14

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.